UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| VALERIE ANDREWS, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION NO. 4:22-CV-3170 |
| v. | § | |
| | § | |
| SAN JACINTO COLLEGE, | § | |
| | § | JURY TRIAL DEMANDED |
| *Defendant*. | § | |

## ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff, **Valerie Andrews** ("Andrews" or "Plaintiff"), files this Original Complaint and shows:

## I.
### PARTIES

1. The plaintiff, Valerie Andrews, is an individual who resides in the state of Texas.

2. The defendant San Jacinto College District ("the College") is a locally controlled, public community college in Harris County, Texas. The College can be served through its Chancellor, Dr. Brenda Hellyer, 4624 Fairmont Pkwy, Suite 200, Pasadena, TX 77504.

## II.
### JURISDICTION AND VENUE

3. Plaintiff brings this suit under the Americans with Disabilities Act, as amended. This Court has jurisdiction of this case according to 28 U.S.C. §§ 1331 and 1343.

4. The practices alleged herein were committed within the jurisdiction of this Court. The amount in controversy is within the jurisdictional limits of this Court.

## IV.
## ADMINISTRATIVE EXHAUSTION

5. All conditions precedent to the filing of this action have been met by Plaintiff in that she timely filed her complaint with the Equal Employment Opportunity Commission ("EEOC") and has received her right-to-sue letter from the EEOC to pursue her claims of disability discrimination.

6. Plaintiff filed a Charge of Discrimination with the TWC-CRD and the EEOC on March 26, 2021, and amended her charge on March 7, 2022.

7. On or about June 17, 2022, Plaintiff received her Notice of Right to File a Civil Action issued by the EEOC entitling her to file suit based on her disability discrimination and retaliation claims.

8. The filing of this lawsuit has been accomplished within ninety (90) days of Plaintiff's receipt of the notice from the EEOC.

## V
## FACTUAL BACKGROUND

9. Plaintiff has been employed as Nursing Faculty with San Jacinto College since January 4, 2017.

10. Plaintiff has multiple sclerosis ("MS"). This is a disabling disease of the brain and spinal cord (central nervous system). Nerve damage and protective sheath (myelin) damage disrupts communication between her brain and the body.

11. Her MS causes many different symptoms, including vision loss, pain, fatigue, and impaired coordination. The symptoms are severe, chronic, and never go away.

12. Approx. two years ago, Dr. Myra "Michelle" DeBose became her leader. On or about May 9, 2020, Plaintiff disclosed her MS to her and requested changes to accommodate her condition.

13. Dr. DeBose was not happy about this. Afterwards, Dr. DeBose systematically and repeatedly discriminated against Andrews, denied her accommodations, treated her differently, and writing her up unfairly and without cause.

14. For example, Andrews was given unreasonable write-ups, was made to teach more than other teachers, and tried to make her life harder and enflame her condition. She purposefully gave Andrews assignments that are physically demanding and require more days than other faculty in her same position. Furthermore, Dr. DeBose withheld information from Andrews that makes it more difficult to do her job and then uses that to justify writing her up.

15. Andrews often complained about this to Dr. DeBose and Human Resources over the past year, and filed grievances. She wanted the environment to improve. That did not happen, instead it got worse.

16. For example, Dr. DeBose made Andrews teach courses that she had no previous experience in instead of the ones she was previously allowed to teach. She also had to work without pay.

17. Unfortunately, San Jacinto College continued to discriminate and retaliate against Andrews since she filed her EEOC charge in March 2021.

18. Less than two months after she filed her EEOC charge, San Jacinto College told her, that her contract would not be renewed. They did not tell her why.

19. Faculty and staff that normally replied to Andrews via text were no longer responding. She was told to just email. Then, they would not respond to her email. Then she was criticized for emailing too much.

20. When she asked her co-workers why they were not responding to her emails, they told her Dr. DeBose told them they only had to reply to her once a day. Dr. Wild wanted to restrict Andrews' communication with Dr. DeBose through Zoom, which is a terrible way to communicate.

21. At a time when faculty were unable to work together in the same space, communication became even more important and yet more restricted than ever. E-mail was the only option available to Andrews and then she was criticized for sending too many emails. She was put in an impossible position.

22. Although Andrews was technically granted her accommodation to no longer be clinical liaison by Dr. Okwonna, that accommodation was never really provided. Dr. DeBose was still having Andrews do clinical liaison duties while also doing the courses she was added to. The only thing that changed was that Andrews stopped getting credit for it.

23. For the fall semester of 2020, Dr. DeBose put Andrews into VNSG 1260.304 Clinical I and VNSG 2431.303 Advanced Nursing skills at the last minute.

24. She gave Andrews this assignment on October 8, 2020. This was 11 days from the start of the semester.

25. Andrews began emailing Professor King (program director) on October 7, 2020 asking for the resources that will be used for the class so she could order the books and get access to any online simulations or other things that were to be covered in the lab.

26. Ms. King would not reply even after several emails. She stated she was too busy, yet when Andrews called other faculty, she was texting and emailing them basic things they needed.

27. Andrews asked for the educational resources she would need and what should be on her blackboard. When Ms. King emailed Andrews back, she said that she taught the course before and should know. Andrews told her she never taught advanced skills and Clinical 1 was in a clinical facility, so online was new to her.

28. Andrews emailed Dr. DeBose for assistance when Ms. King would not help her and she just sent Andrews back to Ms. King.  This exchange went on and on without resolution of Andrews' questions and concerns. She then proceeded to go up the chain of command to Dr. Wild and Ms. Del Bello as Andrews was not being helped.  Dr. Wild responded with "do not include them in department issues."

29. Andrews reached out to all faculty listed in the course, Dr. DeBose, Dr. Wild, Ms. King, and Vickie Del Bello.  No one provided a resolution for Andrews.  She was working with an outdated syllabus, no accurate book list, no guidance on how the course was supposed to be implemented, and seriously outdated course material.  That put Andrews in a very challenging position from the beginning.

30. Additionally, she was denied access to the lab for the hands-on skills that she needed to teach her students in the lab.  The email to all faculty from Dr. DeBose stated that they could use the lab, they just needed to let her know what dates and times and what resources they would need. Andrews requested the lab on Wednesdays and Thursdays from 10:01-5:50pm and stated that she did not need anything from anyone.  Just room access.

31. After this request, the process changed by Dr. DeBose and Andrews was told that she needed to wait until Ms. King called her.  Andrews was not given a timeline or any specific details on when Ms. King would be calling. This made it impossible to plan.  The lab was empty for most of those days, but Andrews was not allowed to come in and she was not called.

32. She was given one day in the lab for a course that is supposed to be in the lab with hands on twice a week for 8 hours a day.

33. There was no consistent time schedule or content listed for the course.  Times and content were done on the fly and Andrews had no say on when her class would start. The start time for her course necessarily hinged on the end time for Ms. Ugo's course. Ugo's class was the lecture portion of the course, and Andrews' class was the application portion. But Ms. Ugo would not keep a regular schedule for her class.

34. Andrews had no control over the start time for her class. Often with Ms. Ugo telling Andrews what to cover and when every day right before class. There were days Ugo cancelled lab, did didactic only, or just changed content. Andrews had no time to prepare, no ability to know when she was supposed to log on and this was challenging for both herself and the students as things were fluid and could change up to 15 minutes before a course was supposed to meet.
35. Andrews was told that some students emailed complaints about her to Ms. King in the Fall 2020 semester. To this day, no one has shared the complete substance of those emails.
36. And the College is ignoring all the high praise from many, many students from all the rest of the courses Andrews taught, including the following:
    - "Professor Andrews is an exceptional leader, and I am very thankful for her help and what she had done for me this semester."
    - "She (Ms. Andrews) needs a promotion"
    - "The course offered me a chance to examine carefully about disease process and the treatments. All variety of contents that we need to take the State Board Exam."
    - "As explained before, Professor Andrews was supportive to our learning and ensured we had the best experiences and materials to promote success, not just in her class, but as a nurse overall"
37. Andrews met with Chancellor Hellyer and HR Director Sandra Ramirez on June 30, 2021, to appeal the non-renewal of her contract. Neither Chancellor Hellyer or Ms. Ramirez would explain why Andrews was being fired. She told them she felt like she was being discriminated against because of her disability and because she complained of discrimination but they did not care.

38. On July 7, 2021, Andrews got a letter from Dr. Hellyer telling her the appeal was denied. In that letter, for the first time, Hellyer told Andrews an explanation for why she was being fired. She claimed it was because of "deficiencies in [Andrews'] work performance and unprofessional conduct." The only specific examples she gave were based on allegations and discipline Andrews got from Dr. DeBose, the person she had been complaining about discriminating against her from the start.

## V.
## CAUSE OF ACTION

DISABILTY DISCRIMINATION IN VIOLATION OF THE ADA

39. Plaintiff incorporates by reference the preceding paragraphs as set forth herein.
40. Plaintiff is an individual with a disability.
41. Plaintiff has multiple sclerosis that substantially limits a major life activity, including her sight, energy, and coordination.
42. Plaintiff's impairments substantially limit the operation of one or more of her major bodily functions: her brain and spinal cord.
43. Defendant regarded Plaintiff as having a physical impairment.
44. Defendant, by and through its agents and employees, has intentionally engaged in the aforementioned practices, policies, customs, and usages made unlawful by the ADA.
45. Defendant has violated the ADA by discriminating against Plaintiff because of her actual or perceived disability.

RETALIATION IN VIOLATION OF THE ADA

46. Plaintiff incorporates by reference the preceding paragraphs as set forth herein.
47. Plaintiff engaged in multiple forms of protected activity: she complained about disability discrimination and retaliation on multiple occasions and she filed a charge of discrimination with the EEOC.

48. Defendant has violated the ADA by retaliating against Plaintiff because of her protected activity by making her work life more difficult and non-renewing her contract.

## VI. DAMAGES

49. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered economic loss, compensatory loss, and mental anguish.

## VII. ATTORNEY'S FEES

50. Defendant's actions and conduct as described herein and the resulting damage and loss to Plaintiff has necessitated Plaintiff retaining the services of SHELLIST | LAZARZ | SLOBIN LLP, 11 Greenway Plaza, Suite 1515, Houston, Texas 77046, in initiating this proceeding. Plaintiff seeks recovery of reasonable and necessary attorney's fees.

## VIII. JURY DEMAND

51. Plaintiff demands a trial by jury.

## IX. PRAYER

52. Plaintiff respectfully prays that Defendant be cited to appear and answer, and that on final hearing of this cause Plaintiff obtain the following relief:

   a. Judgment against Defendant for actual damages sustained by Plaintiff as alleged herein;
   b. Pre-judgment interest at the highest legal rate;
   c. Post-judgment interest at the highest legal rate until paid;
   d. Back-pay;
   e. Front-pay;
   f. Injunctive relief;
   g. Instatement;

h. Damages for mental pain and mental anguish;

i. Attorney's fees;

j. All costs of court expended herein;

k. Such other and further relief, at law or in equity, general or special, to which Plaintiff may show she is justly entitled.

**Respectfully submitted,**

**SHELLIST LAZARZ SLOBIN LLP**

*/s/ Paul R. Harris*
Paul R. Harris
Federal ID No. 897365
State Bar No. 24059905
pharris@eeoc.net
11 Greenway Plaza, Suite 1515
Houston, Texas 77046
(713) 621-2277 - Telephone
(713) 621-0993 - Facsimile

**ATTORNEY FOR PLAINTIFF**